Sidney S. METZNER, Jack E. Metzner, George W. Sellers III, Mark W. Sellers, and Emanuel H. Horn as trustees of the Conservit, Inc., Employee Stock Ownership Plan, and Sidney S. Metzner and George W. Sellers III as trustees of the Conservit, Inc., Pension Plan and Trust, Plaintiffs,

v.

D.H. BLAIR & CO., INC., Peter Rosen, Theodore Rosen, Lena Berger, J. Morton Davis, Defendants.

No. 87 Civ. 1560 (EW).

United States District Court, S.D. New York.

June 24, 1987.

Danzinger, Bangser, Klipstein, Goldsmith, Greenwald & Weiss, New York City, for plaintiffs; Evan L. Gordon, of counsel.

Bachner, Tally, Polevoy, Misher & Brinberg, New York City, for defendants D.H. Blair & Co., Inc. and J. Morton Davis; H. Richard Penn, of counsel.

Guy L. Heinemann, New York City, for defendant Peter Rosen.

Spengler, Carlson, Gubar, Brodsky & Frischling, New York City, for defendant Theodore Rosen; Susan Allison, of counsel.

Marchi, Jaffe, Cohen, Crystal, Rosner & Katz, New York City, for defendant Lena Berger; Patrick A. Reilly, of counsel.

EDWARD WEINFELD, District Judge.

Plaintiffs brought this action against D.H. Blair & Co., Inc., a brokerage firm, J. Morton Davis, its president and principal executive and operating officer, Theodore Rosen and Peter Rosen, two D.H. Blair registered representatives, and Lena Berger, a former D.H. Blair registered representative, alleging breach of a fiduciary duty in violation of Section 404(a)(1) of the Employment Retirement Income Security Act of 1974 (ERISA);[1] securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934;[2] unlawful extensions of credit in violation of Section 7(c) or 7(d) of the Securities Exchange Act of 1934;[3] civil RICO violations;[4] and pendant state law claims for common law fraud and breach of fiduciary duty. Defendants move to dismiss the plaintiffs' complaint for failure to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for failure to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Defendants also seek sanctions under Rule 11 of the Federal Rules of Civil Procedure.

The complaint, the allegations of which are deemed true for purposes of this motion to dismiss,[5] alleges that plaintiffs, as trustees of two employee benefit plans qualified under ERISA, opened, at the solicitation of Lena Berger, two securities trading accounts with D.H. Blair & Co.,

---

1. 29 U.S.C. § 1104(a)(1).

2. 15 U.S.C. § 78j(b).

3. 15 U.S.C. §§ 78g(c) and 78g(d).

4. 18 U.S.C. § 1964(c).

5. *Pross v. Katz,* 784 F.2d 455, 457 (2d Cir.1986).

Inc., on behalf of a qualified employee retirement plan (the Conservit, Inc., Employee Stock Ownership Plan or "ESOP") and a qualified benefit pension plan (the Conservit, Inc., Pension Plan and Trust or "PPT"). The complaint further alleges that in March 1985, Sidney Metzner forwarded funds of ESOP and PPT to D.H. Blair & Co.; authorized certain securities trading activities by Berger on behalf of the ESOP and PPT accounts; and received Berger's acknowledgment that she would invest the funds in ways appropriate to accounts containing assets of employee benefit plans.

In April 1985, Metzner asked Berger to liquidate the accounts, which had decreased in value. Berger ignored this instruction to liquidate the accounts and continued to invest in unsuitable, highly speculative securities which were inappropriate for employee benefit accounts. In May 1985, Berger left D.H. Blair & Co., and was replaced as account representative for the ESOP and PPT accounts by Peter Rosen. Rosen convinced Metzner to maintain the accounts, and to invest more ESOP and PPT assets in an effort to recoup the original investment.

Thereafter, the complaint alleges that Peter Rosen and Theodore Rosen opened margin accounts without authorization from the plans' trustees, and engaged in trading unsuitable for the ESOP and PPT accounts. On July 15, 1986, after further declines in the values of the accounts, Metzner ordered Peter Rosen to liquidate the accounts. Liquidation did not occur until November 1986, when plaintiffs' attorney contacted D.H. Blair & Co. The complaint alleges that during the time the accounts were open, the registered representatives of D.H. Blair & Co., who are among the defendants in this action, sold and purchased new issues, stocks in which

D.H. Blair & Co. made a market, options, and securities which Peter Rosen was explicitly instructed by Metzner not to purchase. The complaint further alleges that this series of events was part of a scheme by the defendants to support the prices of their new issues and stocks in which they maintained a market.

Defendants assert that plaintiffs' claims for fraud and breach of fiduciary duty have not been alleged with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. Defendants seek dismissal of the cause of action under Section 7(c) or 7(d) of the Securities and Exchange Act of 1934, because that section provides no private right of action. The defendants further argue that plaintiffs' civil RICO claims should be dismissed for failure to allege the predicate acts of fraud with sufficient particularity. Defendants also state that one of plaintiffs' civil RICO claims alleging a violation of 18 U.S.C. § 1962(c) improperly casts D.H. Blair & Co. as a "person" and the "enterprise" under 18 U.S.C. § 1962(c).

Defendants motion to dismiss is denied with respect to plaintiffs' ERISA claim but granted, with leave to plaintiffs to amend, with respect to the other causes of action.

### Discussion

On a motion to dismiss, the complaint must be read generously and every reasonable inference drawn in favor of the plaintiffs.[6] The complaint should only be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[7]

#### 1. The ERISA Claim

Plaintiffs' complaint alleges that the defendants breached their fiduciary duty arising under Section 404(a)(1) of ERISA[8]

---

6. *Pross v. Katz,* 784 F.2d 455, 457 (2d Cir.1986); *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 558 (2d Cir.1985); *Nevitsky v. Manufacturers Hanover Brokerage Serv.,* 654 F.Supp. 116, 118 (S.D.N.Y.1987).

7. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Stone v. Chung Pei Chemical Industry Co. Ltd.,* 790 F.2d 20, 22 (2d Cir.1986).

8. 29 U.S.C. § 1104(a)(1) states in pertinent part: a fiduciary shall discharge his duties with respect to a plan ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

by failing to use due care in the management of the accounts opened on behalf of ESOP and PPT and with fund assets. ERISA holds fiduciaries to a prudent man standard of care in the management of qualified plans. To the extent that breach of fiduciary duty is premised on actions allegedly taken by defendants to manage the plans' assets imprudently, the cause of action is sufficient to state a claim for relief because the complaint alleges particular conduct in violation of the prudent man standard.[9] In this instance, the complaint does more than merely assert that there was a lower return "than could have been obtained by the exercise of prudence."[10] The allegations, also, are not limited to fraud. The complaint states that the defendants used the accounts to purchase and sell new issues underwritten by D.H. Blair & Co., stocks in which D.H. Blair & Co. made a market, and options on those stocks. It further alleges that D.H. Blair & Co. was acting in the capacity of a principal in purchases and sales to the accounts, and that these sales, allegedly designed to support the market for D.H. Blair & Co.'s stocks, led to losses in value to the accounts due to failure to liquidate those accounts, despite plaintiffs' demands for liquidation, for fear of depressing the price of the stock. Such allegations raise the claim that defendants failed to act appropriately in connection with the ESOP and PPT accounts.[11]

■ The complaint, read liberally, does allege a failure to use prudence and care in investing the assets of employee benefits plans but this is only actionable under ERISA if the defendants were fiduciaries of the plans. Fiduciary is defined in Section 3(21)(A) of ERISA [12] to include anyone exercising authority or control over the management or disposition of assets of a plan. The defendants Berger, Peter Rosen, and Theodore Rosen allegedly controlled the management of some of the assets of the "ESOP" and "PPT" plans by trading on the accounts without authorization and contrary to the instructions given the defendants by the plaintiffs. Inferences may be drawn from the complaints allegations that the defendants collectively were engaged in a scheme to promote their own interests by improper trading on the ESOP and PPT accounts to posit control of the accounts with the other defendants, as well. These allegations of actual control of the management of the accounts containing assets of the employee benefit plans satisfy the statute's definition of fiduciary.[13] A claim for relief, thus, has been properly set forth under ERISA.

2. The Securities Fraud Claims

■ Plaintiffs' complaint also alleges that defendants violated Section 10(b) of the Securities Exchange Act of 1934. These claims are dismissed for failure to plead with sufficient particularity the charge that defendants Lena Berger and Peter Rosen, with the knowledge of defendants Theodore Rosen and J. Morton Davis, made untrue statements in violation of Section 10(b) of the Securities Act of 1934, and Rule 10(b)(5), promulgated thereunder.[14] The general allegations against Theodore Rosen and Davis fail the Rule 9(b) special pleading requirements.[15] According to the complaint, statements by

---

9. The legislative history of ERISA states that the prudent person standard is to be interpreted "bearing in mind the special nature and purpose of employee benefit plans." S.Rep. No. 93–127, 93d Cong., 2d Sess, *reprinted in*, 1974 U.S. Code Cong. & Ad. News 4838, 4865.

10. *American Communications Assoc. v. Retirement Plan for Employees of RCA Corp.*, 488 F.Supp. 479, 483 (S.D.N.Y.), *aff'd.*, 646 F.2d 559 (2d Cir.1980).

11. *Cf. Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F.Supp. 951, 953 (E.D.Mich. 1978) (breach of fiduciary duty by brokers).

12. 29 U.S.C. § 1002(21)(A).

13. *See, e.g., Stanton v. Shearson Lehman/American Express, Inc.*, 631 F.Supp. 100 (N.D.Ga.1986) (stock broker who is effectively in control of an ERISA plan's assets may be a fiduciary under that act). *Id.* at 103.

14. 17 C.F.R. § 240.10b–5.

15. *See, e.g., Crystal v. Foy*, 562 F.Supp. 422, 432 (S.D.N.Y.1983).

Lena Berger, a former registered representative of D.H. Blair & Co., Inc., and Peter Rosen, a current registered representative, "guaranteed" that the two accounts would regain their lost value. The complaint states that "[i]n or about April 1985," defendant Berger "guaranteed" that the stocks in the two accounts would recover any lost value. Likewise, following the end of Berger's employment "[i]n or about May 1985," Peter Rosen assured plaintiffs that the losses would be corrected if plaintiffs added $12,000. to the "ESOP" account and $37,000. to the "PPT" account. These allegations state the specific facts and sources that support the alleged fact,[16] but do not particularly plead facts necessary to show that the allegedly fraudulent activity involved the actual purchase or sale of securities, as required to state a cause of action under Section 10(b).[17] These allegations also fail to plead particular facts upon which an inference of fraud may be drawn.[18]

◼ Plaintiffs allegation of a fraudulent course of business in violation of Section 10(b) also fails to state a claim for relief because it is replete with failure to specially plead the elements of fraud. Plaintiffs' assert that defendants failed to advise plaintiffs of the risks of the speculative trades; repeatedly refused to discontinue trading in the accounts; converted the accounts to margin accounts without authorization; and purchased stock in vio-

lation of specific instructions. At no point, however, does the complaint give specifics as to actual purchases or sales of stock in the accounts. The complaint merely asserts that a "subsequent review of the accounts" reveals the unauthorized and speculative sales, purchases, and transfers of the accounts, without specifically alleging the factual sources on which the charges are based.[19] Likewise, the causes of action alleging a scheme to defraud and short sales in violation of Section 10(b) are dismissed for failure to satisfy Rule 9(b). These allegations also are based on "subsequent review[s]" of accounts; but, no statement as to dates or other specifics of any such transactions is offered.[20]

### 3. Section 7 of the Securities Exchange Act of 1934

◼ Plaintiffs allege that defendants violated the Section 7 prohibition against unlawful extensions of credit by converting the accounts into margin accounts without the authorization of the plaintiffs. No private right of action, however, exists under Section 7.[21] In determining whether an implied private right of action exists, courts must focus on the intent of Congress.[22] In Section 7, there is no evidence that Congress intended to include a private right of action.[23] Nor was Section 7 created for the "especial benefit" of the investor.[24] Therefore, plaintiffs' claim as to Sec-

**16.** *Id.* at 425.

**17.** *See, e.g., Nevitsky v. Manufacturers Hanover Brokerage Serv.,* 654 F.Supp. 116, 118–19 (S.D.N.Y.1987).

**18.** *See, e.g., Crystal v. Foy,* 562 F.Supp. 422, 425 (S.D.N.Y.1983).

**19.** *Id.* at 429.

**20.** *See, e.g., Nevitsky v. Manufacturers Hanover Brokerage Serv.,* 654 F.Supp. 116, 118–19 (S.D.N.Y.1987).

**21.** *See Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 313 (2d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 3301, 88 L.Ed.2d 776 (1986).

**22.** *See, e.g., Daily Income Fund v. Fox,* 464 U.S. 523, 535–36, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984); *Merrill Lynch, Pierce, Fenner & Smith v.*

*Curran,* 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982).

**23.** *See Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 312 (2d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 3301, 88 L.Ed.2d 776 (1986); *Bassler v. Central National Bank of Chicago,* 715 F.2d 308, 313 (7th Cir.1983) (no indication of congressional intent to create an express or implied right of action); *Walck v. American Stock Exchange, Inc.,* 687 F.2d 778, 789 (3d Cir.1982) (the lack of express remedies in Section 7 militates against finding a congressional intent to create an implied right of action because of the existence of express remedies elsewhere in the statute).

**24.** *Bennett v. United States Trust Co. of New York,* 77 F.2d 308, 312 (2d Cir.1985) (referring to the second criterium asserted in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)).

tion 7 is dismissed. Defendants' motion to impose Rule 11 sanctions is denied. A reasonable inquiry could have caused plaintiffs' attorneys to believe that a private right of action exists under Section 7 of the Securities Exchange Act of 1934. In this instance, it is not "patently clear that [the] claim has absolutely no chance of success under the existing precedents." [25]

### 4. The Civil RICO Claims

■ The defendants also move to dismiss plaintiffs' RICO claims because plaintiffs' alleged that the corporation was both the "enterprise" and the "person." [26] Under Section 1962(c), a corporation may not be held liable for conducting its own affairs through a pattern of racketeering. [27] However, the petitioner's claims under Section 1962(c) do not allege that the defendant corporation was both the enterprise and the person. Rather in the one cause of action alleging a violation of Section 1962(c) where the defendant corporation is allegedly a liable person, the alleged enterprise is not the corporation but instead is an "association in fact" [28] of the corporation and several employees. [29] Regardless of the sufficiency of the "person" assertion, all of plaintiffs' RICO claims are dismissed because the alleged predicate acts of fraud were not pleaded with the particularity required to satisfy Rule 9(b). [30]

### 5. Pendent State Law Claims

■ Plaintiffs' cause of action for common law fraud is dismissed for failure to satisfy Rule 9(b) for the reasons noted above.

■ Plaintiffs' cause of action under the common law for a breach of a fiduciary is preempted under ERISA. Section 514(a) of ERISA provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described" in the definitional section of the act. [31] This section applies to common law as well as statutory law. [32] Section 514(c), which is to be construed broadly, clearly includes preemption of state laws dealing with fiduciary responsibility to the extent that those laws "relate to" the employee benefit plans. [33]

Defendants' motion to dismiss plaintiffs' ERISA claim is denied. Defendants' motion to dismiss is granted as to the other causes of action in the complaint. Plaintiffs are given leave to serve an amended complaint consistent with this order within twenty days.

So ordered.

---

**25.** *See Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986) (quoting the language in *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

**26.** 18 U.S.C. § 1962(c) provides that:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern racketeering activity or collection of unlawful debt.

**27.** *See, e.g., Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir.1985), cert. denied, —— U.S. ——, 106 S.Ct. 3301, 88 L.Ed.2d 776 (1986); *see also Haroco, Inc. v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384, 399–403 (7th Cir.1984) (relying on the language and policy of the statute to require that the enterprise be a separate entity from the

liable person), *aff'd.,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

**28.** 18 U.S.C. § 1961(4).

**29.** *See Haroco v. American Nat'l Bank & Trust Co. of Chicago,* 747 F.2d 384, 401 (7th Cir.1984) ("In the association in fact situation, each participant in the enterprise may be a 'person' liable under RICO but the association itself cannot be."), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

**30.** *See, e.g., Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49–50 (2d Cir.1987).

**31.** 29 U.S.C. § 1144(a).

**32.** 29 U.S.C. § 1144(c).

**33.** *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, ——, 77 L.Ed.2d 490 (1982); *Foltz v. U.S. News & World Report, Inc.,* 627 F.Supp. 1143, 1175 (D.D.C.1986).