Sidney S. METZNER, et al., Plaintiffs,

v.

D.H. BLAIR & CO., et al., Defendants.

No. 87 Civ. 1560 (KC).

United States District Court,
S.D. New York.

June 22, 1988.

Evan S. Gordon, Scott Jaffe, Danziger, Bangser, Klipstein, Goldsmith, Greenwald & Weiss, New York City, for plaintiffs.

Seth Agota, Spengler, Carlson, Gubar, Brodsky and Frischling, New York City, for Theodore Rosen.

H. Richard Penn, Richard Mermelstein, Bachner, Tally, Polevoy, Misher and Brinberg, New York City, for D.H. Blair and Co. and J. Morton Davis.

Guy L. Heinemann, New York City, for Peter Rosen.

Kaufman, Caffey, Gilden, Rosenblum and Schaeffer, New York City, for Lena Berger.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

This action is before the court a second time. The late Honorable Edward Weinfeld dismissed almost all the claims plaintiffs asserted in their original complaint, and simultaneously granted them leave to amend. *See generally Metzner v. D.H. Blair & Co.*, 663 F.Supp. 716, 719–22 (S.D.N.Y.1987). Plaintiffs amended their complaint; all defendants except Lena Berger [1] move to dismiss the amended complaint for failure to allege fraud with particularity, Fed.R.Civ.P. 9(b), and for failure to state a claim on which relief may be based, Fed.R.Civ.P. 12(b)(6). As the facts of the case are discussed in the prior decision, *see Metzner*, 663 F.Supp. at 718–19, they will be discussed only where necessary.

## LEGAL ANALYSIS

A. Securities Laws Claims [2]

█ The first count of the amended complaint defendants move to dismiss,

1. Berger submitted an answer to the amended complaint. *See* Answer of Defendant Lena Berger to Amended Complaint, *Metzner v. D.H. Blair & Co.*, No. 87 Civ. 1560 (filed Aug. 17, 1987).

2. Plaintiffs' first claim, based on the Employee Retirement Income Security Act of 1974

count II, alleges that the defendants made untrue statements of material facts to the plaintiffs. The statements at issue are the following: Defendant Berger *"guaranteed* that the stocks [purchased for the ESOP and PPT accounts that had decreased in value] would recover," Amended Complaint para. 31 (emphasis in original); defendant Peter Rosen would "attempt to cure the damage caused by defendant Berger by 'making customers whole,'" *id.* para. 35; and defendant Peter Rosen *"assur[ed]"* one plaintiff "that the losses which had been sustained as a result of [Berger's] incompetency and dishonesty ... would be recouped," *id.* para. 40 (emphasis in original).

The statements attributed to the named defendants are not actionable.[3] *Compare Zerman v. Ball,* 735 F.2d 15, 20–21 (2d Cir.1984) (E.F. Hutton's advertising slogan "When E.F. Hutton Talks, People Listen," and characterization of bonds as "marvelous" not actionable because they "do not constitute representations of fact that could be actionable under the securities laws") *and Newman v. L.F. Rothschild, Unterberg, Towbin,* 651 F.Supp. 160, 163 (S.D.N.Y.1986) (statements by broker that he would make money for the clients, and that they would make good money on new issues not actionable because "the reasonable investor is presumed to understand that this is nothing more than 'the common puff of a salesman,' not a material factual misstatement") (quoting *Bowman v. Hartig,* 334 F.Supp. 1323, 1328 (S.D.N.Y.1971)) *and Rotstein v. Reynolds & Co.,* 359 F.Supp. 109, 113 (N.D.Ill.1973) (statements that stock was "red hot," that plaintiff "could not lose" by investing in it, and that plaintiff "would make a bundle of money" on another stock not actionable) *with Newman v. L.F. Rothschild, Unterberg, Towbin,* 662 F.Supp. 957, 959 (S.D.N.Y.1987) (broker's statement that he could earn the clients a return of a specific percentage on

their investment actionable). Guarantees, and assurances of success generally, are merely "puffery," and therefore are not actionable under the securities laws. Count II of the Amended Complaint is dismissed.

█ Counts III and IV allege that certain acts undertaken by the defendants constitute both a scheme to defraud and a fraudulent course of business. These expressions are culled from Rule 10b–5, subsections (a) and (c) respectively. *See* 17 C.F.R. § 240.10b–5 (1987). These two subsections have the same pleading requirements. *See Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). The plaintiffs must allege facts showing that the defendants possessed an affirmative duty to disclose facts that "reasonable investor[s] might have considered ... important in the making of th[eir] decision[s]" to purchase or sell securities, and that the defendants failed to execute this duty. *Id.*

Plaintiffs allege that numerous acts undertaken by the defendants create liability on these causes of action. The court need address only certain allegations. Plaintiffs contend, *inter alia,* that the defendants used the ESOP and PPT accounts to engage in numerous financially illogical transactions in order to create a false or misleading appearance with respect to the market for certain securities, for which D.H. Blair & Co. acted as principal or market maker, for the purpose of inducing the purchase and sale of securities by others. *See* Amended Complaint paras. 95, 97, 129(h), 131(h). The Rosens, as coaccount executives, unquestionably owed plaintiffs a duty to disclose market manipulation. *See Affiliated Ute Citizens,* 406 U.S. at 153, 92 S.Ct. at 1472. Further, market manipulation is a fact "reasonable investor[s] might have considered ... important in the making of th[eir] decision[s]." *See*

("ERISA"), which has been alleged adequately, *see Metzner v. D.H. Blair & Co.,* 663 F.Supp. 716, 720 (S.D.N.Y.1987), does not preempt the antifraud provisions of the federal securities acts in the field of pensions. *See Schlansky v. United Merchants & Mfrs., Inc.,* 443 F.Supp. 1054, 1062

(S.D.N.Y.1977); 29 U.S.C.A. § 1144(d) (West 1985).

**3.** Judge Weinfeld did not address this issue in his Opinion. *See Metzner v. D.H. Blair & Co.,* 663 F.Supp. 716, 720–21 (S.D.N.Y.1987).

*id.* at 154, 92 S.Ct. at 1472. Unquestionably, then, "[a]n alleged scheme to manipulate the market for ... stock[s] states a claim under ... section[ ] ... 10(b) of the Securities Exchange Act." *Rooney, Pace, Inc. v. Reid,* 605 F.Supp. 158, 161 (S.D.N.Y. 1985); *see SEC v. Management Dynamics, Inc.,* 515 F.2d 801, 810 (2d Cir.1975) (manipulation of the stock market violates the antifraud provisions of the securities laws); *Crane Co. v. Westinghouse Air Brake Co.,* 419 F.2d 787, 792–96 & n. 11 (2d Cir.1969) ("the violation of 10b–5 consist[s] of nondisclosure of the manipulation"), *cert. denied,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); *SEC v. Resch–Cassin & Co.,* 362 F.Supp. 964, 975, 978 (S.D.N.Y.1973) (manipulation of stock's price within the meaning of 15 U.S.C. section 78i(a)(2) contravenes section 78j and Rule 10b–5).

▮ These counts are pleaded with sufficient particularity to survive Fed.R.Civ.P. 9(b) scrutiny. Plaintiffs enumerate numerous transactions, thereby placing defendants on notice of the basis of plaintiffs' claims. *See Metzner,* 663 F.Supp. at 721 (dismissing counts alleging scheme to defraud, fraudulent course of business, and short sales because the original complaint failed to "give specifics as to actual purchases or sales of stock in the accounts"). Plaintiffs allege that these transactions raise an inference of market manipulation. *See* Amended Complaint at paras. 95, 97, 129(h), 131(h). At the pleading stage, the plaintiffs are entitled to the benefit of all reasonable inferences. *See Budco, Inc. v. The Big Fights, Inc.,* 594 F.2d 900, 902 (2d Cir.1979) (per curiam); *Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 655 F.Supp. 346, 353 (S.D.N.Y.1987); *Samuel M. Feinberg Testamentary Trust v. Carter,* 652 F.Supp. 1066, 1069 (S.D.N.Y.1987); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (in passing on motion to dismiss, complaint's allegations "should be construed favorably to the pleader"). The inference of market manipulation reasonably may be drawn

from the facts plaintiffs present.[4] These counts, therefore, are pleaded sufficiently as against the Rosens, as alleged primary violators.

Whether plaintiffs state causes of action against D.H. Blair & Co. and J. Morton Davis is more problematic. There are three theories of secondary liability under the securities laws—aiding and abetting, acting as a controlling person, or respondeat superior. *See Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 711–12, 716 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). The amended complaint gives no indication as to what theory or theories plaintiffs assert against these defendants. Although plaintiffs are not required to elect one particular theory in their pleading, *see Stern v. American Bankshares Corp.,* 429 F.Supp. 818, 822 (E.D.Wis.1977), the complaint must state a claim for relief under each theory plaintiffs advance. *See id.* at 822–23. To survive defendants' dismissal motions, the amended complaint must state a claim for relief on at least one theory against D.H. Blair and Davis.

▮ Undoubtedly, plaintiffs have stated a cause of action against D.H. Blair & Co. on a theory of respondeat superior. *See Affiliated Ute Citizens,* 406 U.S. at 154, 92 S.Ct. at 1472; *Kohn,* 629 F.2d at 716.

▮ As to Davis, the court presumes that plaintiffs assert that he is liable as a controlling person, as that concept is used in section 20(a) of the Securities Exchange Act, 15 U.S.C. 78t(a) (1982). There is disagreement among the courts as to what elements a plaintiff must plead to make out a prima facie case under section 20(a). One view is that the plaintiff must prove two elements: 1) the controlling person had the power to control or influence the controlled person, and 2) the controlling person was a culpable participant in the primary violation. *See, e.g., Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1440 (9th Cir.1987);

---

**4.** As one example, plaintiffs allege in paragraph 97(a) of the amended complaint that on July 23, 1985, 100 shares of a particular stock were sold from the PPT account at a price of 8¼. On July 24, 1985, 100 shares of the same stock were purchased for the PPT account at the same 8¼ price.

*Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir.1973) (en banc); *O'Connor & Assocs. v. Dean Witter Reynolds*, 529 F.Supp. 1179, 1195 (S.D.N.Y.1981). The other view is that "a prima facie Section 20(a) case requires only proof of control by status." *Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1243 (S.D.N.Y.1981); *see Kohn*, 629 F.2d at 716; *Savino*, 507 F.Supp. at 1243 & n. 21 (citing cases).

It is unnecessary to decide which view is correct, because plaintiffs have pleaded a claim against Davis under the stricter view reflected by *Wool*. In the context of liability of brokerage firms, a plaintiff alleges culpable participation by a controlling person by alleging "failure of the controlling person to maintain and diligently enforce a proper system of internal supervision and control." *Hecht v. Harris, Upham & Co.*, 283 F.Supp. 417, 438 (N.D.Cal.1968), *modified on other grounds*, 430 F.2d 1202 (9th Cir.1970); *see Gordon v. Burr*, 366 F.Supp. 156, 168 (S.D.N.Y.1973) ("brokerage firms are obliged to exercise stringent supervision over their salesmen"), *rev'd on other grounds*, 506 F.2d 1080 (2d Cir.1974). To allege a cause of action against an individual defendant, a plaintiff must first allege that the defendant is a controlling person by virtue of his status as a high ranking employee or officer with the power to direct the brokerage firm's policies or management. *See Leavey v. Blinder, Robinson & Co.*, [1986–87 Transfer Binder] Fed.Sec.L.Rep. para. 92,996 at 94,882, 94,-884–85 (E.D.Pa.1986) [available on WESTLAW, 1986 WL 10556]; *In re Catanella and E.F. Hutton & Co. Sec. Litig.*, 583 F.Supp. 1388, 1421 (E.D.Pa.1984). The plaintiffs in this action allege that Davis, D.H. Blair's president, was "responsible for the establishment and maintenance of policies and procedures by which defendant

D.H. Blair & Co., Inc., conducts its business." Amended Complaint para. 10. The first prong of the stricter test is satisfied.

The court can infer from the amended complaint that plaintiffs charge Davis with a failure to supervise Berger and the Rosens, a charge of culpable participation in the primary violation. *See SEC v. Blinder, Robinson & Co.*, 542 F.Supp. 468, 470, 475 (D.Colo.1982) (even if evidence did not demonstrate active role of brokerage firm's president in making of misstatements and omissions, court "would hold [him] liable for the acts of sales representatives whom he supervised and for whose misconduct he is responsible under Section 20 of the 1934 Act"), *aff'd*, [1983–84 Transfer Binder] Fed.Sec.L.Rep. para. 99,491 (10th Cir.1983), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985); *cf. Wool*, 818 F.2d at 1442 (plaintiff adequately alleged section 20(a) claim against corporation's president by alleging his culpable participation, in that he was responsible for corporation's operations and the preparation and maintenance of corporation's books and records); *Stern*, 429 F.Supp. at 824 (sufficient to allege active participation in corporation's operations and actual, even though not exercised, control over the offending conduct).[5] Plaintiffs have satisfied the second prong of the stricter test for a prima facie section 20(a) case. Therefore, the amended complaint is sufficiently particularized with respect to Davis to meet any Rule 9(b) objection, *see Leavey*, [1986–87 Transfer Binder] Fed.Sec.L.Rep. para. 92,996 at 94,-884–85 ("Plaintiffs' complaint could be more specific only if they surreptitiously attended corporate board meetings or somehow obtained internal corporate communications."), and otherwise suffices to withstand a motion to dismiss.[6]

---

**5.** The split in the case law may be a matter of semantics. One could argue that the requirement of alleging culpable participation merely is a refinement of the requirement of alleging status. For instance, in *Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225 (S.D.N.Y.1981), a case applying the "control by status" test, *see id.* at 1243, the court held that the plaintiffs had pleaded adequately causes of action under section 20(a) against three individuals who occupied positions within the brokerage firm's cor-

porate structure "that gave them the responsibility, and hence the means, of supervising" two account executives. *Id.* at 1244.

**6.** If it is not clear from the discussion, the court has not given any weight to plaintiffs' allegations concerning an article that appeared in *Forbes* magazine about D.H. Blair & Co. *See* Amended Complaint paras. 28–30. Newspaper articles are inadmissible hearsay. *See Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539,

■ Count V charges that the defendants engaged in short selling with the ESOP and PPT accounts. As alleged, the count fails to state a cause of action. Plaintiffs allege violation of section 10(b) and Rule 10b–4. Rule 10b–4 is concerned with "[s]hort tendering of securities." 17 C.F.R. § 240.10b–4 (1987). "The apparent focus of Rule 10b–4 is the deceptive practice of short tendering in order to manipulate the normal pro-rata requirements of most tender offers." *Bache & Co. v. International Controls Corp.,* 324 F.Supp. 998, 1004 (S.D.N.Y.1971), *aff'd per curiam,* 469 F.2d 696 (2d Cir.1972). There are no allegations in the current pleading of any tender offer being made. The count must be dismissed.[7]

■ Count VI alleges that defendants violated Rule 10b–16. The preliminary question to be answered is whether there is a private cause of action for violation of that Rule. The question is still open in this circuit. *See Zerman v. Ball,* 735 F.2d 15, 23 (2d Cir.1984). The court is persuaded by the excellent analysis contained in *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 946–50 (3d Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985), that a private right of action should be implied. "Permitting private plaintiffs who have been harmed by a violation of Rule 10b–16 to bring private damages suits furthers the goal of section 10(b)." *Id.* at 950; *accord, Slomiak v. Bear Sterns & Co.,* 597 F.Supp. 676, 681 (S.D.N.Y.1984). *Contra Establissement Tomis v. Shearson Hayden Stone,* 459 F.Supp. 1355, 1361 (S.D.N.Y.1978).[8]

To state a claim under Rule 10b–16, a plaintiff must allege that she did not receive a written statement or statements detailing the credit terms of her margin account, and that as a result of this concealment, she was misled into purchasing securities that she otherwise would not have bought. *See Angelastro,* 764 F.2d at 949–50; *see also* 17 C.F.R. 240.10b–16 (1987) (stating broker's obligations). Although the amended complaint states merely that the defendants changed the plaintiffs' accounts from cash accounts to margin accounts without plaintiffs' permission, *see* Amended Complaint at para. 135, it is reasonable to infer from this that the Rosens failed to send a written statement detailing the nature of a margin account, including conditions relating to the imposition of interest charges. Further, as the accounts are ERISA assets, the court infers that the plaintiffs were misled into purchasing securities they otherwise would not have bought. The court concludes that plaintiffs have pleaded a cause of action on this claim against the account executives, the Rosens. The court also concludes that, as with counts III and IV, plaintiffs have stated a cause of action under count VI against D.H. Blair & Co. on a respondeat superior theory, and against Davis on a theory that he is a controlling person.

### B. RICO Claims

Counts VII through X of the amended complaint allege various violations of the Racketeer Influenced and Corrupt Organization Act, codified as amended at 18

---

556–57 (5th Cir.1980), *reh'g en banc denied mem.,* 642 F.2d 1210 (5th Cir. Mar.), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *De La Cruz v. Dufresne,* 533 F.Supp. 145, 149 (D.Nev.1982); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 513 F.Supp. 1100, 1232 n. 198 (E.D.Pa.1981), *modified on other grounds,* 723 F.2d 238 (3d Cir.1983), *rev'd on other grounds,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**7.** The amended complaint would fare no better under section 10(a) and Rule 10a–1. To successfully plead a claim under that section and Rule, a plaintiff must allege that the short sales were not "made at a price higher than the next preceding different price." *United States v.*

*Mandel,* 296 F.Supp. 1038, 1039 (S.D.N.Y.1969). The purpose of the section and Rule "is to prevent speculation in a falling market." *Id.* The amended complaint fails to make any allegations involving comparative prices of shares sold short.

**8.** As pointed out by the court in *Slomiak v. Bear Sterns & Co.,* the holding of *Establissement Tomis* is entitled to little weight because it is "cursory" and lacks in depth analysis. 597 F.Supp. at 679; *see Establissement Tomis,* 459 F.Supp. at 1361 (dismissing Rule 10b–16 claim on the ground that the plaintiff "cited no case (and the court is aware of none) holding that a plaintiff may possess a private right of action for damages under Rule 10b–16").

U.S.C. §§ 1961–1968 (1982 & Supp. IV 1986) ("RICO"). An initial problem is the fact that, as plaintiffs readily acknowledge in their motion papers, the "enterprise" plaintiffs allege "had the multiple goals to defraud funds by various and numerous means from the PPT and ESOP accounts." Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss the Amended Complaint at 20. In its latest ruling on the enterprise requirement of RICO claims, the Second Circuit held that "a discrete, even if widespread, and a continuing even if finite, scheme" is not sufficient to establish a RICO enterprise. *See Beauford v. Helmsley*, 843 F.2d 103, 110 (2d Cir.1988). The Second Circuit has held a rehearing en banc on *Beauford* just recently. *See* N.Y. L.J., June 14, 1988, at 1, col. 3. The court determines that the part of defendants' motion to dismiss addressed to the RICO claims should be held in abeyance, pending the Second Circuit's decision in *Beauford*. Defendants may then renew their motion to dismiss, on the ground plaintiffs have not alleged a RICO enterprise, or on any other ground.

## C. Common Law Claims

■ Counts XI and XII are common law counts for fraud and deceit, and breach of brokerage contract. Both claims arise from the defendants' management of the ESOP and PPT accounts. A question arises whether these claims are preempted by ERISA. *See* 29 U.S.C.A. § 1144(a) (West 1985).[9]

The common law of a State is preempted by ERISA to the extent it "relate[s] to" an employee benefit plan. *See id.* § 1144(a), (c); *see also Metzner*, 663 F.Supp. at 722 (section 1144(a) "applies to common law as well as statutory law"). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). "*Shaw* rejected the view that common law causes of action ... are preempted only when they attempt to regulate an area expressly covered by ERISA, such as reporting, disclosure and fiduciary responsibility." *Gilbert v. Burlington Indus.*, 765 F.2d 320, 327 (2d Cir.1985), *aff'd mem. sub nom. Roberts v. Burlington Indus.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986). ERISA does not preempt state law only when the prosecution of state law affects employee benefit plans "in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

With these principles in mind, the court concludes that plaintiffs' state law claims are preempted, because they relate to the management of the plans' investments by ERISA fiduciaries.[10] *See Gilbert*, 765 F.2d at 328 (agreeing with other courts that claims based on common law of contracts are preempted); *Shaw v. International Ass'n of Machinists & Aerospace Workers Pension Plan*, 563 F.Supp. 653, 658–59 (C.D.Cal.1983) ("common law causes of action for breach of contract are preempted" by section 1144(a)), *aff'd*, 750 F.2d 1458 (9th Cir.), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985); *Justice v. Bankers Trust Co.*, 607 F.Supp. 527, 531 (N.D.Ala.1985) ("Because any fiduciary duties owed by [a plan fiduciary] arise under ERISA ..., the liability of [a plan fiduciary] for any suppression of material facts relating to the plan or its assets must be adjudged solely by reference to ERISA."); *District 65, UAW v. Harper & Row, Publishers*, 576 F.Supp. 1468, 1487 (S.D.N.Y.1983) (dismissing common law

---

**9.** Judge Weinfeld earlier dismissed plaintiffs' claim for breach of fiduciary duty on the ground it is preempted by ERISA. *See Metzner v. D.H. Blair & Co.*, 663 F.Supp. 716, 722 (S.D.N.Y.1987). Judge Weinfeld did not dismiss plaintiffs' common law fraud claim for the same reason, only because he already had dismissed the fraud claim for failure to satisfy the pleading requirements of Fed.R.Civ.P. 9(b). *See id.*

**10.** Judge Weinfeld determined that the defendants Lena Berger, Peter Rosen, and Theodore Rosen are ERISA fiduciaries. *See Metzner v. D.H. Blair & Co.*, 663 F.Supp. 716, 720 (S.D.N.Y. 1987). That is the law of the case.

fraud claim on ground it is preempted by ERISA). Therefore, these counts must be dismissed.

CONCLUSION

Counts II, XI, and XII of the amended complaint are dismissed with prejudice as against all defendants. Count V is dismissed without prejudice to replead as against all defendants. The motions to dismiss counts VII through X are held in abeyance, for the reason previously indicated. The motions to dismiss are denied as to counts III, IV, and VI.

Plaintiffs are granted leave to replead and submit a second amended complaint within twenty days of the date this decision is filed with the Clerk of the Court. Plaintiffs need not attach to the second amended pleading any exhibits attached to the first amended complaint.

SO ORDERED.