Jorge M.C.C. de ATUCHA, Plaintiff,

v.

Nelson Bunker HUNT, William Herbert Hunt, Lamar Hunt, Bache Halsey Stuart Shields, Inc., Bache Group, Inc., Alvin Brodsky, Merrill Lynch Pierce Fenner & Smith Incorporated, Conti-Commodity Services, Inc., Norton Waltuch, Melvin Schnell, Defendants.

No. 82 Civ. 6546(MEL).

United States District Court, S.D. New York.

Nov. 21, 1989.

Jared Stamell, New York City, for plaintiff.

Cahill Gordon & Reindel (Thomas J. Kavaler, Leonard A. Spivak, of counsel), New York City, for Bache Group Inc. and Prudential–Bache Securities Inc. (sued herein as Bache Halsey Stuart Shields, Inc.).

Kaye, Scholer, Fierman, Hays & Handler (Paul Curran, Aaron Rubinstein, of counsel), New York City, for Lamar Hunt, Nelson Hunt and W. Herbert Hunt.

Gardere & Wynne (Robert E. Wolin, of counsel), Dallas, Tex., for Lamar Hunt, Nelson Hunt and W. Herbert Hunt.

Rogers & Wells (William R. Glendon, Guy C. Quinlan, Susan A. Garcia, of counsel), New York City, for Merrill Lynch, Pierce, Fenner & Smith, Inc.

Paul, Weiss, Rifkind, Wharton & Garrison (Richard A. Rosen, of counsel), New York City, for ContiCommodity Services, Inc., ContiCapital Management, Inc. and ContiCapital Ltd.

Kaye, Scholer, Fierman, Hays & Handler (Michael A. O'Connor, of counsel), New York City, for Norton Waltuch.

Skadden, Arps, Slate, Meagher & Flom (Jerome S. Hirsch, Erskine D. Henderson, of counsel), New York City, for Melvin Schnell.

LASKER, District Judge.

Nelson Bunker Hunt, William Herbert Hunt and Lamar Hunt (collectively "the Hunts"), Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), ContiCommodity Services, Inc., Norton Waltuch, Melvin Schnell, Prudential–Bache Securities Inc.,[1] Bache Group Inc., ContiCapital Management, Inc; and ContiCapital Ltd. (collectively "defendants") move pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) to dismiss the sixth claim—conspiracy to defraud—of plaintiff Jorge M.C.C. de Atucha's ("de Atucha") amended complaint ("Amended Complaint") for failure to plead with the specificity required by this court's order of July 28, 1986 and for failure to state a claim upon which relief may be granted.[2] For the reasons discussed below the motion is granted.

## I.

De Atucha originally filed a complaint on October 1, 1982, alleging that defendants' conspiracy to raise the price of silver to artificially high levels caused a loss of more than $1,000,000 on his long position in silver futures contracts purchased on the London Metals Exchange ("LME") in January, 1980. The complaint was dismissed on the grounds that de Atucha, a citizen and resident of Argentina, lacked standing under the Commodity Exchange Act ("CEA") and the Clayton Act. *See de Atucha v. Commodity Exchange, Inc.,* 608 F.Supp. 510 (S.D.N.Y.1985). De Atucha moved to reargue and amend his complaint. By memorandum opinion dated July 28, 1986 the motion to reargue was denied and it was determined that de Atucha's claims for common law fraud and conspiracy—contained in his proposed amended complaint—failed to meet the requirements of Fed.R.Civ.P. 9(b) and were otherwise legally insufficient. However, de Atucha was granted 30 days in which to file an amended complaint "to cure the deficiencies in the claims against Merrill Lynch and to allege conspiratorial intent as to the remaining defendants if de Atucha can do so in good faith and in accordance with Fed.R.Civ.P. 11." No. 82–6456, slip. op. at 2–3 (S.D.N.Y. July 28, 1986). The opinion stated:

de Atucha is instructed that the complaint should clearly set forth what the

---

1. Sued herein as Bache Halsey Stuart Shields Inc.

2. Defendants also moved to dismiss on the ground that de Atucha failed to notify them of whether he intends to rely upon foreign law, as required by Fed.R.Civ.P. 44.1. Following counsel's statement during oral argument that de Atucha did not intend to rely on foreign law and would notify defendants if his position changed, defendants withdrew without prejudice this portion of their motion. *See* letter from Susan Buckley, Esq., to the court (Feb. 6, 1989).

goal of the alleged conspiracy was, what the "agreement" consisted of, who agreed with whom to do what, what acts each defendant actually did in furtherance of the conspiracy, how the conspiracy was directed toward harming de Atucha or people in de Atucha's position, and the manner in which de Atucha was harmed by the conspiracy. Moreover, the complaint should not make conclusory statements without setting forth the evidence upon which the allegations are based or inferences are drawn.

*Id.* at 2–3.

On October 1, 1986 de Atucha filed his Amended Complaint, including a sixth claim for relief against all defendants, captioned: "Conspiracy to Defraud." [3] The Amended Complaint is based upon information and belief, except as to de Atucha's own actions.[4] Defendants contend that the Amended Complaint 1) fails to specify the goal of the alleged conspiracy or what the agreement consisted of, 2) does not sufficiently allege any connection between the alleged fraudulent behavior of Merrill Lynch and the alleged conspiracy to raise the price of silver by other defendants, 3) lacks any allegation that defendants' conduct was directed at de Atucha or others in his position, and 4) alleges the same theory upon which de Atucha's antitrust claims were previously dismissed. *See de Atucha v. Commodity Exchange, Inc.,* 608 F.Supp. 510 (S.D.N.Y.1985). De Atucha responds that the Amended Complaint 1) states the goal of the conspiracy and the nature of the agreement, 2) connects all defendants to the conspiracy to defraud, 3) sets forth the way in which the conspiracy was intended to and did harm him.

## II.

■ "[I]n actions alleging conspiracy to defraud or conceal, the particularity requirements of Rule 9(b) must be met." *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985) (citing *Segal v. Gordon,* 467 F.2d

602, 607 (2d Cir.1972)). Federal Rule of Civil Procedure 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The dual purpose of the rule is to give sufficient information to the defendant to permit a reasoned answer and to attempt to protect defendants from the serious harm to reputation that can result from merely having to defend against bare accusations of fraud. *See Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972). "Pleadings of fraud must thus specify the time, place, speaker, and sometimes even the content of the alleged misrepresentation.... Where there are multiple defendants, the complaint must disclose the specific nature of each defendant's participation in the alleged fraud." *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 225–26 (S.D.N.Y.1989) (citations omitted).

> Allegations of fraud cannot ordinarily be based "upon information and belief," except as to "matters peculiarly within the opposing party's knowledge." *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, [95 S.Ct. 1976, 44 L.Ed.2d 467] (1975). To satisfy Rule 9(b) in the latter instance, the allegations must be accompanied by a statement of the facts upon which the belief is founded. *Segal v. Gordon,* [467 F.2d at 608.]

*Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986).

■ The goal of the conspiracy, according to the Amended Complaint, was to "cause the prices paid by purchasers of silver bullion and silver futures and forward contracts to be artificially high ... from about September 1979 to about March

---

**3.** Amended Complaint at p. 82, § X. The sixth claim is the only claim directed against all defendants. The remaining claims are against Merrill Lynch.

**4.** Amended Complaint at p. 1–2.

1980." Amended Complaint at ¶ 271. However, the Amended Complaint fails to specify what the "agreement" was and what each defendant agreed to do to further the conspiracy. De Atucha alleges that what the agreement consisted of is described at ¶ 34 of the Amended Complaint, which states:

> [D]efendants ... acted in concert, and willfully aided and abetted each other for the purpose and with the intent of causing prices paid by purchases [sic], including plaintiff, for silver bullion and silver futures and forward contracts to be artificially high, and, in fact, caused such prices to be artificially high from at least in or about September 1979 to at least in or about mid-March 1980.

As to who agreed with whom to do what, de Atucha points to ¶ 45 which states:

> Manipulators formed an understanding or agreement to act together to force the price of silver higher. During the period of the manipulative scheme, N.B. Hunt and [Naji Robert] Nahas formed the principal axis of communication and coordination among the Manipulators. N.B. Hunt worked with W.H. Hunt and [International Metals Investment Co., Ltd.] while Nahas worked with Waltuch and the Advicorp Manipulators.

Taken alone, this paragraph is conclusory and does not approach the specificity required by the July 28, 1986 opinion or Rule 9(b). Several other paragraphs allege that various of the defendants met with each other at specific times and specific locations to discuss the silver market.[5] However, these paragraphs do not allege how each defendant agreed with any of the other defendants to engage in the alleged conspiracy. The allegations regarding the substance of the agreement and who agreed to do what are simply conclusory and lack a sufficient factual basis to comply with the requirements specified in the July 28, 1986 opinion.

With regard to what each defendant did to further the conspiracy, de Atucha alleges, for instance, that Merrill Lynch participated in the conspiracy by permitting the Hunts to create debits in their accounts by withdrawing monies to build up their silver positions, leaving insufficient funds to cover their additional position commitments at the same time that Merrill Lynch internal memoranda discouraged such action. Amended Complaint at ¶ 154. From this allegation, de Atucha argues that

> [t]he conclusion is inescapable that Merrill Lynch went in with its eyes open and acquired a financial interest in maintaining silver prices at artificially high levels so that the loans and credits extended to the conspirators could be repaid.... From [Merrill Lynch's] failure to disclose [its loans to the Hunts] alone, a jury will be entitled to infer the requisite intent by Merrill Lynch to participate in the conspiracy.[6]

The Amended Complaint also alleges that Merrill Lynch and "Bache"[7]: 1) made loans and other credit available to the other defendants knowing that the funds were being used to manipulate silver prices, 2) deliberately failed to disclose this information to other customers, shareholders and regulators and, 3) sold long positions in silver futures and forward contracts to investors such as de Atucha at artificially inflated prices.[8] Although these allegations specify individual actions on the part of several of the defendants, they do not connect the alleged fraudulent activities of Merrill Lynch and Bache with each other or with other defendants.

### III.

While the discussion above establishes grounds for dismissing the complaint for failure to comply with the requirements set forth in the July 28, 1986 opinion and with Rule 9(b), the clearest failing of the

---

5. *See* Amended Complaint at ¶¶ 53, 67, 80, 105, 112, 118, 119 and 121.

6. Memorandum Of Law In Opposition To Defendants' Motion To Dismiss Plaintiff's Sixth Claim For Relief at 15 (Nov. 9, 1987).

7. It is not clear whether "Bache" is the short form for Prudential–Bache Securities Inc. or Bache Group Inc.

8. Amended Complaint at ¶ 273.

Amended Complaint is the legal insufficiency of the allegations connecting the alleged conspiracy with an intent to injure de Atucha or other foreign traders on foreign markets. De Atucha contends that the manner in which the alleged conspiracy was directed at him is set forth at ¶ 274 of the Amended Complaint, which states:

> For the conspiracy to succeed, innocent purchasers, including plaintiff had to believe that the artificially inflated silver prices were the result of a real economic demand for silver and not the result of leverage, pyramid-trading and manipulation, and be willing to pay the artificially inflated prices.

This conclusory paragraph does not allege how defendants intended to defraud de Atucha or others in his position. This is particularly true since de Atucha was not even trading in the same markets as the defendants. At the very least, where the plaintiff was trading on a British market and defendants were trading in American markets, the plaintiff must allege and must specify the basis for his allegation that the defendants conducted a conspiracy against the British market, or conducted a conspiracy against the American market knowing that it would adversely affect the British market or recklessly disregarding whether it would affect the British market.

In Paragraph 275 de Atucha alleges that he was injured by the conspiracy because, in furtherance of the conspiracy

> Merrill Lynch caused an innocent and unsophisticated investor, with no prior experience in futures contracts, to buy silver contracts at artificially inflated prices, to hold the contracts until maturity ... and to pay an inflated amount to close out his silver position.

As a result, de Atucha claims damages in the amount of $1,952,765.47 with interest. Amended Complaint at ¶ 276. Paragraphs 274 and 275 do not set forth the facts upon which the allegations or inferences are made, as required in the July 28, 1986 opinion. There is no claim made in the Amended Complaint that the actions of the defendants were specifically directed at de Atucha, at traders on the LME, or at any

other class of traders in de Atucha's position.

Moreover, the injury analysis in the opinion dismissing de Atucha's antitrust claims pursuant to Fed.R.Civ.P. 12(b)(6) applies here as well:

> [De Atucha's] theory of antitrust injury depends upon a complicated series of market interactions between the two [silver markets]: the [United States Market] in which defendants acted and the [LME] on which [de Atucha] allegedly sustained injuries. To establish a causal chain, the actions of innumerable individual decision makers must be reconstructed.... Indeed, to find antitrust damages in this case would engage the court in hopeless speculation concerning the relative effect of an alleged conspiracy in the [United States silver futures] market on the price of [LME silver forwards], where countless other market variables could have intervened to affect those pricing decisions.

608 F.Supp. at 515–16 (quoting *Reading Indus. Inc. v. Kennecott Copper Corp.*, 631 F.2d 10, 13–14 (2d Cir.1980), *cert. denied*, 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981)). Defendants argue persuasively that because de Atucha's claims of conspiracy and injury under federal antitrust laws—statutes designed specifically to regulate interstate commerce—were dismissed because the relationship between alleged injury and violation was held too indirect and speculative, it would be illogical to allow de Atucha to seek redress now when he has not pleaded any more specific or direct allegations of conspiracy or injury.

De Atucha contends that *Reading*, upon which the injury analysis quoted above is based, is distinguishable because in that case the plaintiff purchased goods from a person not charged as a co-conspirator, and thus even if the purchase price may have been affected by the conspiracy the alleged injury was deemed too remote to be actionable. In the case at hand, de Atucha argues, Merrill Lynch is an alleged co-conspirator and its sale of silver to him constituted a direct fraud. This distinction is not

persuasive, in light of the failure of de Atucha to allege sufficiently the way in which each defendant participated in the purported conspiracy and the lack of facts upon which an inference could be drawn that the alleged conspirators intended to injure de Atucha or others in his position.

The motion is granted and the Sixth Claim of the Amended Complaint is dismissed.

It is so ordered.