Todd J. **KROUNER,** Plaintiff,

v.

The **AMERICAN HERITAGE FUND, INC.,** American Heritage Management Corporation, Heiko H. Thieme and Richard K. Parker, Defendants.

**No. 94 Civ. 721 (WK).**

United States District Court,
S.D. New York.

Sept. 11, 1995.

William Robert Weinstein, Lowey Dannenberg Bemporad & Selinger, New York City, for Todd J. Krouner, Samantha L. Krouner.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, Senior District Judge.

This is a proposed class action brought by a former shareholder of defendant American Heritage Fund, Inc., which alleges the commission of numerous violations of the federal securities statutes and the breach of fiduciary duties to the Fund's shareholders. Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff moves to amend the complaint pursuant to Fed. R.Civ.P. 15. For the reasons which follow, we grant defendants' motion.

### BACKGROUND

In February 1994, plaintiff purchased $5,000 worth of shares in defendant American Heritage Fund (hereinafter "the Fund"). Five months later he sold all but one of those shares for $3,792, thereby losing $1,206.55 or nearly 25% of his investment. He filed this action in October 1994.

The Fund is a mutual fund "designed for investors who desire to participate in a carefully supervised program of seeking maximum capital growth." American Heritage Fund, Inc. Prospectus, Oct. 1, 1993 at 1. Defendant American Heritage Fund Management Corporation (hereinafter "the Management Corporation") provides investment advice to the Fund. Defendants Heiko H. Thieme and Richard K. Parker are officers of the Management Corporation and in such capacity advise the Fund with regard to investments.

The complaint alleges that defendants failed adequately to disclose, either in the Fund's registration statement of September 1993 (hereinafter the "Registration Statement") or in its prospectus of October 1993 (hereinafter the "Prospectus"), the speculative nature of the Fund's investment techniques. More specifically, it contends that none of the Fund's literature discussed the Fund's extremely risky practice of investing in "restricted securities" and in poorly capitalized securities, known as "small cap stocks."

The complaint further alleges that the Fund engaged in other similarly risky investment strategies such as purchasing stock from companies "lacking any significant operating history or products with any established market whatsoever," Complaint at ¶ 24(c), and "invest[ing] significant amounts of money in companies otherwise unable to obtain financing, based merely on an interview between the company's executives and [defendant] Thieme and a review of the company's financial statements or product," Complaint at ¶ 24(c). These practices, plaintiff contends, were disclosed neither in the Registration Statement nor in the Prospectus, and resulted in a 30% decline in the Fund's value.

Plaintiff contends that the above-discussed omissions violate section 11 of the 1933 Securities Act, 15 U.S.C. § 77k, which prohibits omissions of material fact from registration statements; section 12(2) of the 1933 Securities Act, 15 U.S.C. § 77l(2), which does likewise with regard to prospectuses; and section 8(b) of the Investment Company Act, 15 U.S.C. § 80a–8(b), which requires that all SEC-registered investment companies file a registration statement containing "a recital of all policies of the registrant * * * in respect of matters which the registrant deems of fundamental policy," (8(b)(3)) and

the information and documents which would be required to be filed in order to register under the Securities Act of 1933 and the Securities Exchange Act of 1934 all securities * * * which the registrant has outstanding or proposes to issue.

(8(b)(5)).

The complaint also asserts that defendants overvalued the worth of the restricted and small-cap securities held by the Fund, consequently inflating the Fund's asset value. Complaint at ¶ 26. However, the complaint fails to relate this allegation to a particular cause of action.

Plaintiff further asserts that defendants, without having obtained necessary authorization from the shareholders, deviated from the Fund's established investment policies by starting to invest in "companies with no operating history or proven product whatsoever, and companies who could obtain financing from no other source whatsoever," in violation of § 13(a)(3) of the Investment Company Act. Complaint at ¶ 53.

Finally, the complaint alleges that the Management Corporation, Thieme and Parker, by participating in the above-described activity, breached their fiduciary duties to plaintiff under § 36(b) of the Investment Company Act; and that all defendants, in so participating, breached such duties under the common law.

### The October 1993 Prospectus

The introduction to the Fund's October 1993 Prospectus states in pertinent part (emphasis added):

The Fund is designed for investors who desire to participate in a carefully supervised program of seeking maximum capital growth. The Fund may utilize the investment techniques of short-term trading, hedging, leveraging, the purchase and sale of put and call options and warrants, the writing of listed put and call options and the purchase of foreign securities. Through the use of these and other investment techniques described herein, management hopes to take advantage of investment opportunities in both rising and declining markets. *These techniques involve greater than normal risk* and attainment of the Fund's objection cannot, of course, be assured. Common stocks and securities convertible or exchangeable thereto, *including securities, issued by smaller and lesser known companies,* will normally constitute all or substantially all of the Fund's portfolio.

*     *     *     *     *     *

This Prospectus sets forth concisely the information about the Fund that a prospective investor ought to know before investing.

Prospectus at 1.

The Prospectus contains the following discussion of special risks associated with the Fund's investment strategies:

### SPECIAL RISK CONSIDERATIONS

In contrast to most mutual funds, the Fund, in addition to the usual investment practices, *may seek to obtain its investment objective through the use of certain speculative investment techniques which entail greater than average risks.* For example, the Fund may increase its security holdings through the use of money borrowed from banks ("leveraging"), it may engage in short selling to profit from in a decline in price of particular securities or to protect against downward movement in the market, the Fund may purchase puts and calls and warrants and combinations thereof, it may purchase restricted securities and it may engage in short-term trading.

\* \* \* \* \* \*

The Fund is not a complete investment program and *is designed for investors willing to assume risks inherent in the Fund's investment policies* and practices in order to seek achievement of the Fund's investment objective. No assurance can be given that the Fund will be successful.

\* \* \* \* \* \*

The Fund will invest principally in common stocks and securities convertible into or exchangeable for common stocks, such as rights, warrants and put and call options. To a limited degree, the Fund may invest in preferred stocks and debt securities, such as corporate bonds and debentures and securities issued by the United States Government and its instrumentalities, when they are believed to offer opportunities for growth of capital or are desirable in the light of prevailing market or economic conditions. Any such debt securities so purchased by the Fund may be either "investment grade" or speculative.

*Such securities may include obligations of issuers that are in default or in bankruptcy* when Management believes that the prospect of capital appreciation outweighs the risk of investment therein. Naturally, *the risk attendant to the investment in such securities, as well as other debt securities, can be substantial* inasmuch as the value thereof is based upon the ability of the issuer to make all required payments of interest and principal. Generally, debt securities which are believed to offer opportunities for growth of capital, including securities referred to as "junk bonds," may be purchased by the Fund when Management believes (a) interest rates will decline and, therefore, the value of the debt securities will increase, or (b) the market value thereof is likely to appreciate due to factors affecting specific issuers.

Id. at 5–6 (emphasis in original). It later discusses the Fund's policy of investing in restricted securities:

### PURCHASES OF RESTRICTED SECURITIES

The Fund may acquire portfolio securities called restricted securities, which can only be sold pursuant to an effective registration statement under the Securities Act of 1933 or an exemption from such registration. \* \* \* The Fund normally will be able to purchase restricted securities at a substantial discount from the market value of similar unrestricted securities, but there are certain risks which the Fund will necessarily assume in acquiring restricted securities. The principal risk is that the Fund may have difficulty in disposing of such securities without registration under the Securities Act of 1933 and the Fund will have to bear the risk of market conditions prior to such registration. In the absence of an agreement obtained at the time of the purchase of such securities, there can be no assurance that the issuer will register the restricted securities. Furthermore, if the Fund disposes of restricted securities without registration, it may be necessary to sell such shares at a discount similar to or greater than that at which the Fund purchased the shares.

For purposes of determining the Fund's net asset value, restricted securities are valued at fair value as determined in good faith by the Board of Directors of the Fund. At May 31, 1993, restricted securities held by the Fund and which were not then registered under the Securities Act of 1933 were valued at approximately $6,710,200.

Id. at 9.

As the complaint observes, the Prospectus makes no mention of investment in companies without products with established markets or significant operating histories. Nor does it include any detailed discussion of the particular risks attendant to such investment; nor to investment in "small cap" securities; nor to the Fund's alleged practice of investing large sums in companies having difficulty obtaining financing after it had conducted only a cursory review of the financial statements of such companies.

### The Registration Statement

The Registration Statement includes as an addendum a copy of the Prospectus. None of the other materials submitted along with the Registration Statement advise the SEC of the particular risky investment strategies which plaintiff asserts the Fund engaged in without informing its investors.

### Recent Developments

Sometime after filing this action, counsel for plaintiff obtained a copy of the Fund's October 1994 Prospectus (hereinafter the "1994 Prospectus") and October 1994 Registration Statement. The introduction to the 1994 Prospectus contains the following statement:

Common stocks and securities convertible or exchangeable thereto, including securities issued by small and virtually unknown companies, companies whose securities are not publicly traded or are otherwise illiquid and companies that have no history of operations, or for other reasons, have never earned a profit, will normally constitute all or substantially all of the Fund's portfolio.

Affid. of William Weinstein, Ex. I at 3. It elsewhere states:

The Fund may make speculative investments such as the purchase of securities issued by small and virtually unknown companies * * * Such companies are often extremely thinly capitalized and the Fund bears the risk of a total loss of its investment in such companies.

Id. at 12. Defendants object to plaintiff's use of these statements as evidence of their liability under Fed.R.Evid. 407.

At argument on the instant motions, counsel for plaintiff stated that he had recently obtained the Fund's November 1994 "Semi-Annual Report." In his view, the Report suggests that the Fund—during the time period relevant to this action—had been exceeding limits on the illiquid assets it holds to 15% of its net assets which were imposed by both the SEC's "Guidelines for Form N–1A," Defendants' Reply Brief Ex. A, and the Fund's own investment restrictions. Under terms set out in both Prospectuses discussed heretofore, such restrictions cannot be altered or eliminated without

the approval of the lesser of (a) 67% or more of the voting securities of the Fund present at a meeting, if the holders of more than 50% of the outstanding securities of the Fund are present or represented by proxy, or (b) more than 50% of the outstanding voting securities of the Fund.

The Prospectus at 11; the 1994 Prospectus, Weinstein Affid., Ex. I at 21.

## DISCUSSION

The complaint states claims for materially misleading omissions from the Registration Statement and Prospectus; for deviation from certain investment policies which may not be altered or abandoned without a shareholder vote; and for breaches of defendants' fiduciary duties to plaintiff. We address each of these sets of claims in turn.

### Materially Misleading Omissions from the Prospectus and Registration Statement

We first address plaintiff's claims under § 11 and § 12(2) of the Securities Act. Under § 11, an issuer of securities, as well as

certain of its officers, are liable to a purchaser of its securities for filing a registration statement pertaining to such securities which "contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements made therein not misleading." 15 U.S.C. § 77k(a). Under § 12, a party offering or selling securities is liable to a purchaser of those securities for offering or selling them

> by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances in which they were made, not misleading
> * * *

15 U.S.C. § 77l.[1]

Defendants make two arguments in support of their motion to dismiss plaintiff's §§ 11 and 12(2) claims: (1) that the complaint fails to identify which statements in either the Registration Statement or Prospectus are misleading in light of the omitted information; and (2) that the alleged omissions are not ones of material fact. Because we agree with defendant's second argument, we need not consider the first.

■ Having alleged violations of §§ 11 and 12(2), plaintiff has the burden of demonstrating that the omissions at issue were material. See Maywalt v. Parker & Parsley Petroleum Co. (S.D.N.Y.1992) 808 F.Supp. 1037, 1047. Accordingly,

> plaintiff must make a showing of substantial likelihood that, under all the circumstances, the omitted [or misrepresented] fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted [or misrepresented]

fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

Id. (citing TSC Indus. Inc. v. Northway, Inc. (1976) 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757).

■ The Registration Statement and Prospectus include detailed discussion of the serious risks entailed in its typical investment strategies. They address the specific risks associated with investing in restricted securities. Moreover, they discuss in significant detail the hazards of investing in debt securities and "junk bonds." We fail to see how a reasonable potential investor in the Fund, informed that it regularly invested in bankrupt companies, could have been influenced in any way by the knowledge that it also invested in poorly capitalized companies or companies without a proven marketing track record. In our view, plaintiff's §§ 11 and 12(2) claims have as much merit as a claim made by an Atlantic City gambler who had lost some money at a black jack table that the casino owner had defrauded him by not specifically mentioning in its promotional literature that the casino maintained that particular gambling device.

■ Moreover, we decline to consider the Fund's 1994 Prospectus in our determination. Federal Rule of Evidence 407, captioned "Subsequent Remedial Measures," provides in pertinent part (West 1995):

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.

The Second Circuit has applied Rule 407 in the securities context.[2] Accordingly, we dismiss plaintiff's §§ 11 and 12(2) claims.

1. Both sections also provide certain jurisdictional requirements which are not at issue in this case.

2. In S.E.C. v. Geon Industries, Inc. (2d Cir.1976) (Friendly, C.J.) 531 F.2d 39, 52, the Second Circuit noted the propriety of the trial court's decision to exclude evidence that a brokerage firm had introduced a new regulation aimed at preventing future tipping cases brought under

Rule 10–b 5. See also Malone v. Microdyne Corp. (4th Cir.1994) 26 F.3d. 471. In Malone, the Fourth Circuit held in a class action securities fraud case that defendant's Form 10–K Annual Report, which was filed after the allegedly misleading statements sued upon, was excludable under Rule 407. The Malone plaintiffs had alleged that a number of defendant's press releases and filings with the SEC reported certain sales of

■ The complaint also states claims under §§ 8(b)(3) and (5) of the Investment Company Act, which provide, in relevant part, that every registered investment company file with the SEC a registration statement containing:

> (3) a recital of all policies of the registrant, not enumerated in paragraph (1) or (2) of this subsection, in respect of matters which the registrant deems matters of fundamental policy.

> \*   \*   \*   \*   \*   \*

> (5) the information and documents which would be required to be filed in order to register under the Securities Exchange Act of 1934, all securities (other than short-term paper) which the registrant has outstanding or proposes to issue.

15 U.S.C. § 80a–8(b)(3),(5). The claim seeks recision of plaintiff's purchase of his shares in the Fund.

We grant defendants' motion as to this count. Plaintiff has not identified any policies "which the registrant deem[ed] matters of fundamental policy" which were omitted from the Registration Statement. With respect to (5), as we have above explained, plaintiff has failed to meet his burden of demonstrating that the omissions from the Prospectus and Registration Statement were material.

### Deviation from Certain Investment Policies

■ Section 13(a)(3) of the Investment Company Act provides in pertinent part (at 15 U.S.C. § 80a–13(a)):

> No registered investment company shall, unless authorized by the vote of a majority of its outstanding voting securities \* \* \* deviate from any investment policy which is changeable only if authorized by shareholder vote, or deviate from any policy recited in it registration statement pursu-

ant to section 80(a)–8(b)(3) of this title; \* \* \*

The complaint asserts that all defendants "caused the fund to deviate from investment policies which were changeable only if authorized by shareholder vote, including the investment in companies with no operating history or proven product whatsoever, and companies who could obtain financing from no other source whatsoever." *Complaint* at ¶ 53. In his memorandum of law filed in opposition to defendants' motion, plaintiff asserts the following (at 24–25):

> It is beyond dispute, particularly at this stage of the proceedings, that no investment policy disclosed in the Prospectus authorized the Fund's investment in the type of small-cap securities described in the Complaint and admitted to in the Amended Prospectus—those involving no profitable (or any) operating history, going concern qualifications in accountants' reports, undeveloped product lines, unavailable credit lines, dependence on stability of foreign governments (as opposed to foreign currency fluctuations), substantial existing litigation risks, and immediate dilution upon purchase of the securities and particularly involving the possible loss of the Fund's entire investment in that security and company.

As defendants correctly observe, the *complaint* fails to identify the particular policy or policies from which defendants purportedly deviated. Both the Registration Statement and Prospectus list policies of the Fund which were as of October 1993 "changeable only if authorized by shareholder vote." See Prospectus at 10–11. These policies, among other things, limited the Fund's borrowing of money, its investment in any one issuer or industry, its investment in debt securities and restricted securities, and its engaging in short sale transactions; they also prohibited the Fund from purchasing securities of other investment companies and from underwriting

---

defendant's software products to one distributor as final sales, but not that the distributor had a right to return defendant's products if it could not sell them or that the distributor actually returned 40% of the products defendant had sold

it. 26 F.3d at 475. The Form 10–K Annual Report, filed after such releases and filings, and several months after plaintiffs initiated suit, reported defendant's return policy with regard to distributors.

the securities of other issuers.[3] Nowhere included in this list is any policy regarding investment in "small cap" securities, or securities in the types of companies with which plaintiff is concerned.[4]

Plaintiff responds to these arguments by asserting that the Fund should have established restrictive policies regarding the particular investment strategies with which he is concerned. However, he has fails to provide any authority which suggests defendants were so obligated. Accordingly, we dismiss plaintiff's § 13(a)(3) claim.

### Breaches of Fiduciary Duty

Plaintiff's breach of fiduciary duty claims, brought under § 36(b) of the Investment Company Act and under the common law, are based solely on plaintiff's allegations that defendant violated §§ 11 and 12(2) of the Securities Act and §§ 8(b) and 13(a)(3) of the Investment Company Act, which we have dismissed. Accordingly, we grant defendants' motion as to plaintiff's fiduciary duty claims.

### Plaintiff's Request for Leave to Amend the Complaint

At argument on the motion, counsel for plaintiff sought leave to amend the complaint to assert new claims under the federal securities statutes and under the Investment Company Act relating to the Fund's investment in restricted and illiquid securities. On that occasion he represented to the Court that the 1994 Prospectus and the Fund's Semi–Annual Report of November 1994, both of which he obtained after filing the complaint, suggest that the Fund exceeded regulatory limits on such investment, as well as deviated from policies which could, under § 13(a)(3) of the Investment Company Act, only have been altered or abandoned by shareholder vote.

Because plaintiff did not raise these arguments until it was too late for defendant to object to them, we refrain from granting leave to amend the complaint in the above-described manner at this time.

### CONCLUSION

For reasons stated above, we dismiss the complaint in its entirety. Plaintiff may, if so advised, within 30 days of the date of this order make a renewed motion for leave to file an amended complaint limited to claims relating to the Fund's investment in restricted and illiquid securities. Defendants may file opposition to such a motion within 30 days of its making.

**SO ORDERED.**

---

3. However, the policies did not in any way prohibit the Funds from acquiring restricted securities. See Prospectus at 10–11.

4. We also note that on its face § 13(a)(3) imposes liability upon registered investment companies but not upon corporate officers or other types of companies. The statute clearly states that "[n]o registered investment company shall ... deviate from its policy ..." The Fund is the only defendant which is such a company.